## ELIZABETH LEE, Appellant, &c.

A testator, without children, bequeathed his personal property, with certain specific exceptions, to his wife, and then devised a portion of his real estate to his executors in trust to sell the same and pay his debts and certain legacies out of the proceeds. After the execution of the will, the testator sold that portion of his real estate and purchased other real estate. The Probate Court having refused to grant the executors a license to sell the after-acquired real estate of the testator for the payment of his debts, it was *held*, that the wife, who had petitioned that such license might be granted, was entitled to appeal ; and that the after-acquired real estate should be first applied to the payment of the debts, it being clearly the intent of the testator, that the personal estate bequeathed to his wife should be exempted from liability for such debts.

THIS was an appeal from a decision of the Probate Court.

On November 27th, 1818, Elisha Lee, of Sheffield, the husband of the appellant, executed his will, which contained the following devise :

" I will and devise to my beloved wife, Elizabeth Lee, all my personal property, excepting only therefrom my law library, and my other private library, with the exception of forty volumes which she may select therefrom, and also twenty-two shares in the Twelfth Massachusetts Turnpike Corporation, being one half of the shares of which I am the owner therein. I furthermore give and bequeath unto her the use and improvement and profits of all my real estate lying and being in said Sheffield, for and during her natural life." The will, then, after several devises of real estate, and of the personal estate so excepted, proceeded as follows :· "And it is my will, that the remaining one hundred and seventy acres of land in said Canandaigua," &c. " be sold by my executors hereafter mentioned, and the proceeds thereof be applied to the following purposes, viz. three hundred dollars to be given to the Foreign Missionary Society, two hundred dollars to the American Bible Society, and the residue to be applied equally for the benefit and behoof of my said executors, my own debts being first discharged and paid from the same fund ; and I hereby give and bequeath the said tract of land last mentioned to my said executors, their heirs and assigns, in trust for the purposes aforesaid. And, furthermore, it is my will, that the remainder of my real estate in Sheffield, after the life estate before devis-

ed to my beloved wife, shall be divided between Elisha Lee, son of Milo Lee, and Charles Lee, son of Samuel Lee, Esquire." The testator died without children and his estate was to go to collateral heirs.

After the will was executed, the testator sold the lands in Canandaigua. His executors petitioned the Probate Court for a license to sell for the payment of his debts, certain real estate which was purchased by the testator after the execution of the will ; and the appellant presented a petition at the same time, and in the same case, that such license might be given ; but the Probate Court refused to grant the petition of the executors.

From this decision of the Probate Court, the appellant appealed, and assigned for cause, that the testator bequeathed to her all his personal estate, with certain exceptions, and exempted the same from the payment of his debts.

*Sept.* 23d.

*C. A. Dewey* and *Barnard*, for the appellant, cited *Bootle* v. *Blundell*, 1 Meriv. 193 ; *Seaver* v. *Lewis*, 14 Mass. R. 83 ; *Hays* v. *Jackson*, 6 Mass. R. 149 ; *Thellusson* v. *Woodford*, 4 Ves. 325.

*Porter, contrà*, in behalf of the heirs at law. The personal estate is the primary and appropriate fund for the payment of the debts, and must be so applied, before resort is had to devised or undevised real estate. *Tower* v. *Lord Rous*, 18 Ves 138. It is not enough, that the real estate is charged with the payment of the debts, but it must appear clearly, that the personal estate is discharged therefrom. *Rogers* v. *Rogers*, 3 Wendell, 503 ; *Bootle* v. *Blundell*, 1 Meriv. 193 ; *Hancox* v. *Abbey*, 11 Ves. 186 ; *Tait* v. *Lord Northwick*, 4 Ves 816 ; *Brummel* v. *Prothero*, 3 Ves. 111 ; *Manning* v. *Spooner*, 3 Ves. 114 ; *Livingston* v. *Livingston*, 3 Johns. Ch. R. 153 ; *Livingston* v. *Newkirk*, 3 Johns. Ch. R. 319. There is a difference between a *specific* and *general* bequest of personal property. In the latter case, the property is liable to the payment of debts, unless there is a plain declaration in the will to the contrary. In the present case, there was no such plain declaration, but simply a general bequest ; and the will is to be taken as silent in regard to debts, the land charged with the payment thereof having been sold by the testator. This sale was a revocation of the will *pro tanto*. It annihilated

the fund out of which it was provided that the debts should be paid, and threw the liability for the debts back upon the personal property as the fund first chargeable with their payment. *Walton* v. *Walton*, 7 Johns. Ch. R. 262 ; *Seaver* v. *Lewis*, 14 Mass. R. 83 ; *Hays* v. *Jackson*, 6 Mass. R. 149.

*Tucker*, for devisees.

SHAW C. J. delivered the opinion of the Court. This is an appeal from a decision of the Probate Court, which was taken under these circumstances. The executors of the will or Elisha Lee, late of Sheffield, in this county, petitioned for a license to sell some part of the real estate of the deceased for the payment of his debts, and the widow, the appellant, presented a petition at the same time, and in the same case, praying that such license might be granted. This she claimed a right to do, on the ground, that by the will of her deceased husband, most of his personal property was bequeathed to her, exempt, as she alleged, from the liability for the payment of debts ; that if such license were granted, it would give effect to that exemption in her favor ; if otherwise, by operation of law, the personal property would be taken by the executors and applied to the payment of the debts of the deceased ; so that she had a direct interest in that question.

When this case first came before the Court, some doubt was expressed, whether, as the immediate question is between the executor and the heir, the widow can be considered a party aggrieved, so as to be entitled to an appeal. The interest of the widow is sufficiently manifest and real ; the only question is, if it is sufficiently direct and immediate, to permit the Court to recognize her as a party.

In the case of *Hays* v. *Jackson*, 6 Mass. R. 149, the leading case on this subject, the parties were the same. A petition for a license was presented by the executors. Mrs. Swan, who claimed certain estate under the will, either joined with them in the petition, or filed a petition in aid of their claim, and this was resisted by the heir at law, claiming after-purchased real estate, by descent. Mrs. Swan, the residuary legatee, claiming under the will, was recognized as a party properly before the Court. The only difference in this respect between that case and the present is, that there, the case came

up upon an original petition to this Court, and here, by force of a more recent statute, the petition was originally presented to the Probate Court, with a right of the party aggrieved to appeal.

Indeed, the whole question, of substantial interest, is between the legatee and the heir, and the executors are usually mere trustees, bound to administer the estate according to law, but to them it is generally quite immaterial out of what fund the debts are paid.

But in order to consider these questions more distinctly, to ascertain who are proper parties, in a petition for license to sell real estate for the payment of debts, it may be proper to inquire what questions are rightfully presented to the Court for decision upon such proceeding, whose interests are affected by them, and what is the effect and operation of such decision upon those interests.

By the policy of our law, all property, real and personal, upon the decease of the owner, is made liable for the payment of his debts, and no testamentary disposition which he can make, can exempt either species of property from that liability, when the whole is necessary. But when the whole is not necessary, the owner may dispose of the surplus by will; and under this power he may direct what species or portions of his property shall first be applied to the payment of his debts, and what portions or kinds of his property shall be exempted from this liability, and this direction will be so far respected by the law, that the latter shall not be taken until the former has proved insufficient. Thus, though the personal property is the first and natural fund for the payment of debts, yet if the testator expressly exempts some personal property, as by a specific legacy of a coach and horses, or plate and pictures, and directs his debts to be be paid out of other funds, or leaves other funds not exempted, such specific legacies shall not be taken for debts, if there are other funds, so first liable.

Again, the executors of a will are not only to administer the property which is given by the will, but by force of the statute, if there be any property not embraced in the will, they are to administer it as intestate, in the same manner as the administrators of estates wholly intestate. As to real estate, such

intestate property may consist either of real estate, which the testator owned at the time of executing his will, but which was not embraced in any devise, or of estate purchased afterwards, which by law could not pass by a devise,* or be in any respect affected by the will. As to real estate devised, it was competent for the testator, under the general power of ownership, the *jus disponendi*, to authorize and empower his executor to sell it and apply the proceeds to the payment of debts, and then no license for that purpose would be necessary. But although it is in the power of a testator to clothe his executor with such a power to sell, yet if he fails to do it, and it is necessary to make such sale, in order to convert the real estate into money and thus make its assets for the payment of debts, or if the estate was purchased after the making of the will, so that the will, whatever were its terms, would not operate upon it, in either of these cases, it becomes incumbent on the executor to apply to a court, having by statute the jurisdiction in such case, to grant a license accordingly.

This view will enable us to ascertain, to some extent, what questions must arise upon such petition. They will be these, whether there are debts owing and unpaid ; whether the personal property has been all applied and exhausted ; if not, then whether the property not applied, is by the terms of the will exempted, until certain real has been first applied ; if so, of the several portions or parts of the real estate, which st all first be applied, as for instance, lands specifically directed to be sold for the payment of debts, after-purchased lands, lands embraced in a residuary devise, land-specifically devised but which is subject to the payment of debts, by the terms of the will, before specific bequests of personal property specifically exempted, until all other sources fail. In fine, the Court are called on, in such case, necessarily, to marshal the assets, to determine what estate ᵼ first applicable, and what next, and this necessarily calls upon the Court to determine, among the different claimants and holders of the different portions of property, real and personal, claiming by the will and claiming by descent respectively, whose property shall be taken and whose

---

* This rule is now altered by the Revised Statutes ɪ. 62, § 3.

left. It raises questions between these several parties, to the extent of the whole amount required to be raised for the payment of debts. With such interests depending, in the questions to be decided, we think they may be deemed parties, entitled to appear and put forth and maintain their respective claims, and that being thus recognized as parties, if the decree is against them, they may consider themselves as parties aggrieved, and take an appeal from such decision.

Supposing the case then to be rightly before the Court, upon the appeal, the question is, whether under the circumstances shown, the executors ought to have license to sell the after-purchased real estate, before calling for and applying the personal. That this question properly arises, on a petition for a license to sell real estate, was settled in the case of *Hays* v *Jackson*, 6 Mass. R. 149. The Court are to grant license to sell real estate only in case the personal, that is, the personal which is first applicable, has been applied ; and when the petition is to sell a particular class or kind of real estate, it must be a good answer for those interested, to show, that there is other estate unapplied, which by force of the will, or by the operation of law, is first applicable. In effect, therefore, the Court must, upon such petition, marshal the assets, in order to determine whether the executor shall have license to sell any real estate, under the circumstances appearing, and if so, which kind or portion of the real estate, as affecting the various claimants, in the character of legatees, devisees and heirs.

In considering this question, we are first to examine the will. It is perfectly manifest, we think, that it was the intention of the testator, that his wife should hold all the personal property he should leave, subject to certain specific deductions for other legatees, and this exempt from the payment of debts. This results from the absolute and unqualified gift of the personal property, without charging it, or considering it chargeable, either in terms or by implication, with the payment of his debts ; and by directing that his debts should be paid out of another fund, arising from proceeds of real estate in New York, directed by him to be sold, and devised to his executors in trust for that purpose. That the testator considered

this fund amply sufficient for the purpose, is manifest from this, that he charges other large specific legacies upon the same fund, and then devises the residue of it, in such terms as to show that he still considered the gift of the residue as a beneficial gift. It clearly results from these views, we think, that it was the intent of the testator, that his wife should have the personal estate exempt from all charge for the payment of debts. Can this intent be carried into effect, consistently with the rules of law.

It appears that after this will was made, the testator sold the lands in New York, which, by the will, were made a fund for the payment of debts. From this fact, it is argued by the counsel for the heirs, and the argument is certainly entitled to great weight and consideration, that as this sale of the land thus appropriated as a fund to pay debts, was a revocation of the will *pro tanto*, the legal effect of this was to withdraw and annihilate the fund out of which it was originally provided, that the debts should be paid, and thus to throw the liability for debts back again upon the personal property, as the first fund chargeable by law, for their payment. But we think the argument fails on several grounds. In the first place, the alienation of the estate charged with the payment of debts, operates as a revocation of the will only collaterally and consequentially, by operation of law ; and we think it would be pressing a mere inference of law beyond its just bearing, to infer from this sale a change of intent, beyond what necessarily follows from the fact. The fact of such alienation shows no change of the original intention of the testator to give the personal property to the wife exempt from debts. Suppose the testator had said in terms, that his wife should take all the personal estate, exempt from debts, and had indicated no fund from which the debts should be paid ; still if he left other estate not exempted, on which they could be charged, as if he held real estate at the time of the execution of his will, not devised by it, we see no reason why the undevised real estate shall not be taken, before the personal, which has been bequeathed by the owner, having a right by law so to dispose of his estate. The reason why the intent of the testator shall not in all cases be carried

into effect is this, that creditors have a paramount claim to all legatees, devisees and heirs ; and therefore if a testator manifests his intent ever so strongly, as if he were to give all his real and personal property specifically, and exempt from the payment of debts, such intent must be wholly inoperative as against creditors. Some of the property clearly intended to be given to devisees and legatees, must be taken, and then it becomes a question among those standing upon an equal footing, so far as the beneficent intent of the testator is concerned, and then a different rule may prevail. But no such reason applies, when other funds exist, applicable by law to the payment of debts, arising either from undevised property, or from after-acquired property, or any other source. There the intent of the testator may prevail, without defeating or impairing the claims of creditors, and there seems to be no reason why it should not The original intent of the testator, that his wife should have the personal property to her own use, is very manifest. It appears from the will, that he was without children, and that his estate was to go to collateral heirs, and that he intended to make a liberal provision for his wife. But except the use and improvement of certain real estate, he gave her no property, subject to her own disposal, except the personal property by the legacy in question. After the alienation of the real estate, he leaves his will, unrevoked, unaltered and without republication. There is a fund applicable by law to the payment of debts, in the after-purchased real estate, the application of this will not disturb or defeat the purposes of the will, and, therefore, we think it should be first applied.

The rule seems distinctly recognized in the case of *Hays* v. *Jackson*, 6 Mass. R. 149, though the facts differed. There the devise to Mrs. Swan was in terms residuary, and made subject to the payment of the testator's debts. And on that ground it was held, that such residuary estate must be taken before the descended, or after-purchased estate. It went upon the ground, that nothing was given to her, except what should remain after the debts were paid. But the Court say, as there was no specific bequest of any chattel, and no exemption of any part of the personal estate from the payment of debts,

such estate was first to be applied, clearly implying, that if such personal estate had been specifically bequeathed, or otherwise bequeathed absolutely and specially exempted, it would not have been applied before the descended estate. The same doctrine is confirmed by the case of *Seaver v. Lewis*, 14 Mass. R. 83. It proceeded on the ground, that it did not sufficiently appear by the will, that the testator intended to provide a fund for the payment of debts for the purpose of exempting the personal estate.

We take the rule now to be well settled, that as the personal estate is the first fund applicable to the payment of debts, it will not be exempted in favor of the legatee, unless it appears from express words or necessary implication, from the whole will, that it was the intention of the testator so to exempt it. But when it appears to have been the intention of the testator to provide for the payment of debts by a sale of real estate, and not merely by a general charge of debts on the real estate, there the proceeds of such real estate shall be first applied. *Hancox v. Abbey*, 11 Ves. 179 ; *Burton v. Knowlton*, 3 Ves. 107 ; *Brummel v. Prothero*, 3 Ves. 111.

In the present case, the testator bequeathed his personal estate, not by a residuary clause, but as an absolute bequest, and he devises property in trust to his executors and directs them, out of the proceeds, to pay his debts. This, we think, manifests a clear intention of the testator to give the personal property to his wife, exempt from liability to pay debts.

Then the only question is, how is the result affected by the events, which occurred after the making of the will, viz. the alienation by the testator in his lifetime, of the estate thus given in trust for the payment of debts, and the purchase of other real estate. The Court are of opinion, for the reasons already assigned, that this alienation of the estate is not evidence, that the testator had altered his intention, that the personal estate should go to the wife, exempt from the payment of debts. Then the only question is, whether descended real estate shall go for the payment of debts before personal property absolutely bequeathed, and intended to be exempt from the payment,

and the Court are of opinion, that the descended real estate should be first applied. *Livingston* v. *Newkirk*, 3 Johns. Ch. R. 319. The general rule is laid down in *Hays* v. *Jackson*, that descended or undevised real estate, shall be applied before personal property specifically bequeathed or bequeathed free from liability for the payment; and the latter is the present case.